UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| JOSÉ DANIEL PÉREZ PIÑA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:25-cv-00509-SDN |
| | ) | |
| DERRICK STAMPER, *Chief Patrol Agent, Houlton Sector, U.S. Border Patrol*, et al., | ) | |
| | ) | |
| Respondents. | ) | |

## <u>ORDER GRANTING MOTION FOR ATTORNEY'S FEES AND EXPENSES</u>

On October 3, 2025, Petitioner José Daniel Pérez Piña filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging Respondents unlawfully re-detained him under 8 U.S.C. § 1225(b)(2) when he should have been discretionarily detained, if at all, under 8 U.S.C. § 1226(a). *See* ECF No. 1. The Court granted his petition on October 16, 2025, holding section 1226 applies to his situation as a noncitizen who has resided continuously in the United States for more than two years, which rendered his re-detention unlawful from the outset. ECF No. 20 at 6. Mr. Pérez Piña timely moves for an award of attorney's fees and costs in the amount of $14,515.42 under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. ECF Nos. 29, 33.[1]

## ANALYSIS

The EAJA provides that a court shall award fees, costs, and other expenses incurred by the prevailing party in a civil action against the United States "unless the court

---

[1] Mr. Pérez Piña initially requested $11,698.99 for the cost of litigating the underlying habeas petition, ECF No. 29 at 6, but he revised his request to $14,515.42 to include the costs of litigating the instant fee petition, ECF No. 33 at 7.

finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The "position of the United States" includes both the underlying agency action and the United States' litigation position. *Id.* § 2412(d)(2)(D). A party seeking an award must show (1) the petitioner prevailed in the civil case; (2) the petition was filed on time; (3) the Government's position was not substantially justified; and (4) no special circumstances exist that would make awarding fees against the Government unjust. *Castañeda-Castillo v. Holder*, 723 F.3d 48, 57 (1st Cir. 2013). Neither party disputes the first two factors are satisfied.[2] *See* ECF No. 29 at 3; ECF No. 32 at 1. However, Respondents argue Mr. Pérez Piña is not entitled to fees for two reasons: first, the EAJA does not waive the Government's sovereign immunity to grant fees for immigration habeas petitions; and second, Respondents' litigation position was substantially justified.

## I.   EAJA

The threshold issue in this case is whether the District Court possesses subject matter jurisdiction to assess attorney's fees under the EAJA for a habeas corpus petition arising from civil immigration detention. The EAJA provides in relevant part: "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort)." 28 U.S.C. § 2412(d)(1)(A). The central question is whether Petitioner's challenge to his immigration detention pursuant to 28 U.S.C. § 2241 constitutes a "civil action" under the EAJA.

---

[2] A fee petition is timely if it filed within thirty days after the time to appeal the final judgment has expired. *See* 28 U.S.C. § 2412(d)(1)(B) (EAJA requires that fee application be filed within 30 days of "final judgment"); *id.* § 2412(d)(2)(G) ("final judgment" means "a judgment that is final and not appealable"); Fed. R. App. P. 4(a)(1)(B) (party has 60 days after judgment is entered by the district court to file an appeal); *Pierce v. Barnhart*, 440 F.3d 657, 661 (5th Cir. 2006) ("[T]he thirty-day EAJA clock 'begins to run after the time to appeal that final judgment has expired.'") (quoting *Melkonyan v. Sullivan*, 501 U.S. 89, 96 (1991)).

The Government ordinarily enjoys sovereign immunity from awards of monetary relief. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). But the Government may waive sovereign immunity by statute. *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 48 (2024). "[A] waiver of sovereign immunity must be 'unequivocally expressed' in statutory text." *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (quoting *Lane v. Peña*, 518 U.S. 187, 192 (1996)). Courts must strictly construe any ambiguity "in favor of the government," *Castañeda-Castillo*, 723 F.3d at 68, whether it concerns either the existence or scope of a waiver, *Cooper*, 566 U.S. at 291. The EAJA's fee award provision operates as a statutory waiver of sovereign immunity. *Ardestani v. INS*, 502 U.S. 129, 137 (1991). Accordingly, if the phrase "any civil action" allows more than one reasonable interpretation—one that includes civil immigration habeas actions and one that excludes them—then the Court must construe the scope of the waiver to exclude them. Respondents argue the term "civil action" is ambiguous as to whether it encompasses the habeas proceeding at issue because habeas cases are not categorically civil, and the ambiguity should be construed in favor of the Government. ECF No. 32 at 3–4. Petitioner responds that *immigration* habeas proceedings are civil actions and the EAJA unambiguously encompasses them. ECF No. 33 at 2.

Since the Court does not adopt the Government's interpretation of the statute simply because it is facially plausible, the Court must first determine whether the statutory text itself is ambiguous.

The Court begins by determining whether "the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Penobscot Nation v. Frey*, 3 F.4th 484, 490 (1st Cir. 2021) (quotation modified). "When the text is unambiguous and the statutory scheme is coherent and consistent," the Court does not

look to legislative history or congressional intent to discern whether the definition of "any civil action" encompasses immigration habeas proceedings. *Id*. In considering the text, the Court agrees with and adopts the Third and Tenth Circuits' articulation of the common law and the historical meaning of "civil action": "As used in the EAJA, 'civil action' unambiguously refers to any legal action brought to enforce a private or civil right, or to redress a private wrong." *Daley v. Ceja*, 158 F.4th 1152, 1159 (10th Cir. 2025); *see also Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 425–26 (3d Cir. 2026); *Canel Abjal v. Wesling*, Dkt. No. 26-cv-10190, ECF No. 27, at *6 n.4 (D. Mass. Mar. 27, 2026) (adopting *Michelin*'s definition of "civil action" in its entirety). Seeking a writ of habeas corpus likewise seeks "the enforcement of the civil right of personal liberty." *Ex parte Tom Tong*, 108 U.S. 556, 559 (1883). Accordingly, a habeas corpus action seeking to effectuate one's personal liberty interest—particularly, freedom from detention—qualifies as a civil action. *See Daley*, 158 F.4th at 1160 (collecting cases of "every federal circuit court existing at the time of the EAJA's passage [holding] that habeas was civil"); *Ouimette v. Moran*, 730 F. Supp. 473, 477 (D.R.I. 1990) ("It is well established that habeas corpus proceedings are characterized as civil in nature.").

The Court rejects Respondents' reliance on *Harris v. Nelson*, 394 U.S. 286 (1969), and *Schlanger v. Seamans*, 401 U.S. 487 (1971), which they cite to argue that habeas actions are not always categorically defined as civil. Both cases concluded that habeas actions are "technically 'civil,'" but may not be subject to the same rules of procedure governing civil actions. *Id*. at 490 n.4; *see Harris*, 394 U.S. at 293–94 (discussing the application of the Federal Rules of Civil Procedure to habeas practice); *Ouimette*, 730 F. Supp. at 478 ("Although the applicability of the Federal Rules of Civil Procedure to habeas corpus actions has been limited to some degree, the characterization of such cases as civil

4

in nature remains unchanged . . . ." (citing *Harris*, 394 U.S. 286)). Variation in procedural rules does not alter the civil nature of the action for EAJA purposes; the EAJA does not foreclose a fee award merely because procedural rules differ. *See Daley*, 158 F.4th at 1161 ("[T]he EAJA itself makes clear that its waiver of sovereign immunity extends to actions that do not follow the normal rules of civil procedure," like social security appeals.). Most tellingly, the EAJA uses the word "any" civil action to incorporate a broad sweep of cases, rather than cabining relief to only certain types of civil cases. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting *Webster's Third New International Dictionary* 97 (1976))). Congress did not add any limiting language to the breadth of that word, so the Court will not infer an exclusion for cases deemed only "technically 'civil.'" *Schlanger*, 401 U.S. at 490 n.4.

Similarly, the Court finds unpersuasive the two circuit courts of appeals which have found that habeas actions are barred by the EAJA. *See Barco v. Witte*, 65 F.4th 782 (5th Cir. 2023); *Obando-Segura v. Garland*, 999 F.3d 190 (4th Cir. 2021). Both courts rested on a conclusion that habeas proceedings are a "hybrid" of criminal and civil actions, in large part because both proceedings seek release from detention. *Id*. at 194 ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody. There are not 'criminal habeas writs' and 'non-criminal habeas writs': there are just writs for habeas corpus." (quotation modified)); *Barco*, 65 F.4th at 785 ("noting that courts have found that a '§ 2255 motion is a hybrid, with characteristics indicative of both civil and criminal proceedings'" (quoting *United States v. Johnston*, 258 F.3d 361, 365 (5th

Cir. 2001)). But neither decision accounts for the breadth of the word "any," which would encompass even "hybrid" proceedings so long as they are civil in some manner.

Moreover, *Barco* and *Obando-Segura* did not acknowledge the distinction between habeas proceedings arising from a criminal conviction and those arising from civil immigration detention. Immigration detention is civil because it is an "aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). However, "to the extent that a habeas proceeding reviews a criminal punishment with the potential of overturning it, the habeas proceeding necessarily assumes part of the underlying case's criminal nature." *O'Brien v. Moore*, 395 F.3d 499, 505 (4th Cir. 2005). In any event, whether or not habeas petitions take on different characteristics in criminal and civil contexts, this petition arises solely from a civil action. As this Court has explained, immigration habeas petitions "institute on the Court's civil docket" as actions seeking judicial review of agency action. *Bernardo-Rodrigues v. Hyde*, No. 25-CV-00553, 2026 WL 370863, at *1 (D. Me. Feb. 10, 2026). These considerations confirm the conclusion that immigration habeas petitions are civil in nature.

The Court holds a habeas petition challenging civil immigration confinement unambiguously constitutes a civil action within the meaning of the EAJA. Because the statute's language is unambiguous, the Court does not apply the sovereign immunity presumption for which the Government argues, and exercises subject matter jurisdiction over Petitioner's request for attorney's fees.

## II. Substantially Justified

Respondents' second objection asserts their litigation position—that Mr. Pérez Piña was subject to mandatory re-detention without a bond hearing under section 1225(b)—was substantially justified. The Government bears the burden to prove

6

substantial justification by a preponderance of the evidence. *Saysana v. Gillen*, 614 F.3d 1, 5 (1st Cir. 2010). To be "substantially justified," the Government's position need not be "justified to a high degree," rather, it suffices if it is "justified in substance or in the main." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court will recite only the relevant facts here.[3] Mr. Pérez Piña, a Venezuelan national, is an asylum applicant who entered the United States without inspection on or about September 15, 2023. ECF No. 1 at 1–2. U.S. Customs & Border Protection ("CBP") first detained him pursuant to 8 U.S.C. § 1226(a).[4] *Id*. at 2. CBP held him for five days before issuing him a Notice to Appear and initiating removal proceedings against him on September 20, 2023. *Id*.; ECF No. 1-2 at 2.  That same day, the Government released him into the United States on his own recognizance under 8 U.S.C. § 1226(a). ECF No. 1-3 at 2. Less than a year later, Mr. Pérez Piña applied for asylum, withholding of removal, and protection under the Convention Against Torture. ECF No. 1 at 3. On September 29, 2025, local police arrested Mr. Pérez Piña and contacted United States Border Patrol ("USBP") to verify Mr. Pérez Piña's identity. ECF No. 11 at 2. The results revealed that USBP had previously arrested Mr. Pérez Piña for uninspected entry, and he was "in active immigration proceedings" and had been "released on bond pending his next immigration court date." *Id*. Respondents re-detained him, and then he filed a habeas petition

---

[3] The Court's earlier order granting Petitioner's habeas petition recounts the factual circumstances in greater detail. *See Pérez Piña v. Stamper*, No. 25-CV-00509, 2025 WL 2939298, at *1–2 (D. Me. Oct. 16, 2025).

[4] Under section 1226, a noncitizen who is "arrested and detained" faces three potential outcomes during the pendency of their removal proceedings: the Attorney General "may continue to detain the arrested [noncitizen]"; "may release the [noncitizen] on bond of at least $1,500"; or "may release the [noncitizen] on conditional parole." 8 U.S.C. § 1226(a). Section 1226(a) therefore "establishes a discretionary detention framework for noncitizens." *Gomes v. Hyde*, No. 25-CV-11571, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025).

pursuant to 28 U.S.C. § 2241 challenging his detention and requesting a bond hearing before an immigration judge. ECF No. 1 at 5.

Respondents argue they were bound to re-detain Mr. Pérez Piña by the Board of Immigration Appeals' recent decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sept. 5, 2025). *Yajure Hurtado* held that noncitizens, like Petitioner, who entered and resided in the United States without inspection at the border are considered "applicants for admission" who must be mandatorily detained under 8 U.S.C. § 1225(b)(2). *Id*. at 228. But Petitioner's re-detention is governed by Immigration & Customs Enforcement's ("ICE's") own regulations on *re*-detaining noncitizens who have been granted supervised release, which requires "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619–20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)).[5] These requirements reflect core due process principles: once the Government grants release, it may not revoke that liberty interest without notice and an opportunity to be heard. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any 'person . . . of . . . liberty . . . without due process of law.' Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."); *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903) ("But this [Supreme] [C]ourt has never held, nor must we now be understood as holding, that administrative officers, when executing the provisions of a

---

[5] The regulation provides: "The Service may revoke a[] [noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2).

statute involving the liberty of persons, may disregard the fundamental principles that inhere in 'due process of law' as understood at the time of the adoption of the Constitution. One of these principles is that no person shall be deprived of his liberty without opportunity, at some time, to be heard . . . .").

ICE, like every agency, must follow its own regulations. *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003). When a regulation protects a fundamental right—such as the opportunity to be heard—noncompliance renders the resulting action invalid. *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017). Accordingly, Respondents' reliance on *Yajure Hurtado* fails on its own terms. They were required to follow their own regulations, which entitled Petitioner to a bond revocation hearing before his re-detention, and their failure to provide this process made re-detention unlawful from the outset.[6]

Respondents' reliance on *Yajure Hurtado* also fails for independent reasons. First, it is the domain of federal district courts to interpret federal statutes, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–01 (2024) ("[A]gencies have no special competence in resolving statutory ambiguities. Courts do."), and it is the district courts' responsibility to determine the constitutionality of civil commitment when it is challenged, *see Hernandez-Lara v. Lyons*, 10 F.4th 19, 28 (1st Cir. 2021) (discussing the liberty interests of a noncitizen detained under section 1226(a)). An agency's interpretation cannot conclusively determine the constitutionality of its own actions.

---

[6] The First Circuit has clearly articulated the regulatory and due process requirements governing re-detention. *See Kong*, 62 F.4th 608. Courts in this Circuit have applied those requirements in materially similar factual circumstances. *See, e.g., Nguyen v. Hyde*, 788 F. Supp. 3d 144, 153 (D. Mass. 2025). Both decisions predate Mr. Pérez Piña's re-detention in September 2025 and therefore should have guided Respondents' conduct.

9

Second, most courts in the First Circuit (including the entirety of the District of Maine) and across the country had already concluded at the time of Petitioner's detention that *Yajure Hurtado* does not control in factual scenarios such as Petitioner's.[7] *See Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 246–57 (D. Me. 2025) (collecting cases). The Court acknowledges that substantial justification requires only a position that a reasonable person could find correct, *see Michel v. Mayorkas*, 68 F.4th 74, 78 (1st Cir. 2023), and a small minority of courts, including some divided appellate courts, have adopted Respondents' position that section 1225 mandates detention of noncitizens like Petitioner. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 508 (5th Cir. 2026) (holding that section 1225(b)'s mandatory detention provision applies to noncitizens like Petitioner); *Avila v. Bondi*, 170 F.4th 1128, 1138 (8th Cir. 2026) (same); *but see Cunha v. Freden*, No. 25-3141, ___ F.4th ___, 2026 WL 1146044, at *23 (2d Cir. Apr. 28, 2026) (holding that detention of noncitizens like Petitioner is governed by section 1226(a), not section 1225(b)); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, ___ F.4th ___, 2026 WL 1243395, at *21 (11th Cir. May 6, 2026) (same); *Lopez-Campos v. Raycraft*, Nos. 25-1965, 1969, 1978, 1982, ___ F.4th ___, 2026 WL 1283891, at *11 (6th Cir. May 11, 2026) (same); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, ___ F.4th ___, 2026 WL 1223250, at *11 (7th Cir. May 5, 2026) (Lee, J.) (same).

However, a close reading of the caselaw within the First Circuit—which is, of course, binding on this Court—reveals that constitutional due process concerns underlay the decisions to grant similarly-situated petitioners' habeas petitions. *Hernandez-Lara*, which has governed such cases since it came down, held that courts must apply

---

[7] The First Circuit has not yet addressed the issue directly, but district courts within the Circuit have consistently rejected Respondent's position.

"procedural due process protections to well-defined categories of noncitizens (e.g., section 1226(a) detainees)." 10 F.4th at 45. As Chief Judge Walker explained, "Respondents' reliance on *Hurtado* has always been in tension with the teaching of *Hernandez-Lara*; it has never involved an attempt to simply take a new administrative approach to detention in a legal vacuum." *Bernardo-Rodrigues*, 2026 WL 370863, at *3. Respondents have advanced no argument now as to how Mr. Pérez Piña's due process rights were respected. Indeed, they stipulated at the outset that Petitioner's case is materially indistinguishable from *Chogllo Chafla*, wherein this Court found that constitutional due process rights require section 1226(a) to apply to noncitizens like Petitioner. *See Chogllo Chafla*, 804 F. Supp. 3d at 262–64.

As such, Respondents' course of action in Mr. Pérez Piña's case lacked substantial justification from the start. Respondents re-detained Mr. Pérez Piña and revoked his bond without notice and an opportunity to be heard; they classified him as subject to mandatory detention under section 1225(b) despite overwhelming legal authority to the contrary, particularly including within this District and this Circuit; and they disregarded his due process rights at every turn. Because Mr. Pérez Piña is the prevailing party in a civil action and the Government's position was not substantially justified, he is entitled to an award of fees and costs under the EAJA.

## CONCLUSION

Accordingly, the Court **GRANTS** Petitioner's motion for attorney's fees and costs. ECF No. 29. Pursuant to the Court's authority under the EAJA, 28 U.S.C. § 2412(d)(1)(A), the Court **ORDERS** the United States to pay attorney's fees in the amount of $14,515.42, in full satisfaction of any and all attorney's fees and expenses under the EAJA in this action.

SO ORDERED.

Dated this 20th day of May, 2026.

/s/ Stacey D. Neumann
**UNITED STATES DISTRICT JUDGE**